# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

BARBARA S.K.,[1]

      Plaintiff,

vs.

FRANK BISIGNANO, Commissioner of
Social Security,

      Defendant.

No. 25-CV-1010-KEM

**MEMORANDUM OPINION
AND ORDER**

_____

Plaintiff Barbara S.K. seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for child's disability benefits (CDB) and supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Plaintiff argues the Commissioner erred in considering Plaintiff's statements about the limitations her impairments caused and that the ALJ's decision is not supported by substantial evidence. The court affirms the Commissioner's decision.

## I. BACKGROUND

Plaintiff filed for disability benefits at age 27, alleging disability due to depression, anxiety, attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD). AR 16, 65-66, 75. After denial of her claims at initial and reconsideration reviews, Administrative Law Judge (ALJ) Dina LaMarche held a hearing on December 3, 2024. AR 16, 36-95. The ALJ issued a written opinion on December

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

13, 2024, following the five-step process outlined in the regulations[2] to determine whether Plaintiff was disabled. AR 16-30. The ALJ found Plaintiff suffered the following severe impairments: learning disability, depression (variously diagnosed as bipolar disorder), anxiety disorder, ADHD, PTSD, and autism spectrum disorder.[3] AR 19. The ALJ determined Plaintiff's residual functional capacity (RFC)[4] included:

- understanding, remembering, and carrying out simple instructions;
- occasional interaction with supervisors outside of a training period;
- occasional interaction with coworkers, limited in duration and intensity, without tandem work or team tasks;
- no interaction with the general public;
- no fast-paced production work or work that requires hourly quotas, but she can meet end-of-the-day quotas; and
- occasional changes in a routine setting.

AR 22. The ALJ found that based on Plaintiff's age (a younger individual), her limited education, and the determined RFC, she could perform work as a janitor, kitchen helper, and laundry worker. AR 28-29. Accordingly, the ALJ found Plaintiff was not disabled. AR 29-30.

---

[2] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. § 416.920(a)(4)**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

[3] The ALJ also found Plaintiff suffered from severe asthma, but because Plaintiff does not challenge the ALJ's physical RFC determination, I do not address it in this order.

[4] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

The Appeals Council affirmed the ALJ's decision in a written opinion dated December 31, 2024, making the ALJ's decision the final decision of the Commissioner.[5] AR 3-5. Plaintiff filed an appeal in this court on March 4, 2025. Docs. 1, 4. The parties briefed the issues (Docs. 13, 15, 16) and consented to the jurisdiction of a United States magistrate judge (Doc. 9).

## II.    DISCUSSION

So long as substantial evidence in the record as a whole supports the ALJ's decision, a reviewing court must affirm.[6] "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."[7] The court "do[es] not reweigh the evidence or review the factual record de novo."[8] If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision."[9]

Plaintiff asserts the ALJ erred in considering Plaintiff's subjective complaints. When evaluating a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions."[10]

---

[5] *See* **20 C.F.R. § 416.1481**.

[6] ***Grindley v. Kijakazi***, 9 F.4th 622, 627 (8th Cir. 2021); *accord* **42 U.S.C. § 405(g)**.

[7] ***Kirby v. Astrue***, 500 F.3d 705, 707 (8th Cir. 2007).

[8] ***Naber v. Shalala***, 22 F.3d 186, 188 (8th Cir. 1994).

[9] ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

[10] ***Black v. Apfel***, 143 F.3d 383, 386 (8th Cir. 1998); *accord* ***Polaski***, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*, 804 F.2d 456 (8th Cir. 1986). The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth

3

The ALJ may rest her credibility finding on "objective medical evidence to the contrary,"[11] or "inconsistencies in the record as a whole."[12] Courts must "defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'"[13] In particular, Plaintiff argues the ALJ failed to consider all relevant evidence and summarized the record in a misleading and inaccurate manner.

In her written decision, the ALJ summarized Plaintiff's testimony and reported limitations, and found them "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 22-23. The ALJ then discussed the evidence, including Plaintiff's educational records, mental health treatment records from Plaintiff's primary care provider and psychiatrist, a psychological consultative examination, medical opinion evidence, and a third-party function report from Plaintiff's boyfriend. The ALJ recognized Plaintiff's mental impairments caused limitations but concluded that "the degree of functional limitation alleged by [Plaintiff] [wa]s not entirely consistent with the medical evidence of record." AR 26. The ALJ noted Plaintiff's symptoms had "generally remained stable with noted improvement in her symptoms with medication" and that examinations documented that overall, Plaintiff functioned adequately, including her memory, cognition, attention, socialization, and appearance. *Id*. The ALJ noted Plaintiff's visit to the emergency room was an isolated incident, and that she required no further ER visits or any hospitalizations. The ALJ

---

Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. **Jones v. Callahan**, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

[11] **Ramirez v. Barnhart**, 292 F.3d 576, 581 (8th Cir. 2002).

[12] **Brockman v. Sullivan**, 987 F.2d 1344, 1346 (8th Cir. 1993).

[13] **Schultz v. Astrue**, 479 F.3d 979, 983 (8th Cir. 2007) (quoting **Hogan v. Apfel**, 239 F.3d 958, 962 (8th Cir. 2001)).

found that Plaintiff's report of being unable to take out trash because she did not like going outside was contradicted by her travel to two different states, and that treatment record indicating she could run errands alone countered her claim that she could not go to stores alone. The ALJ wrote that she accounted for the waxing and waning nature of Plaintiff's impairments in the RFC determination.

Plaintiff takes issue with the ALJ's summary of her educational records, noting portions of those records that the ALJ did not cite. For example, Plaintiff points to a record showing "severe difficulties in reading, written language, and mathematics" (AR 271). But the ALJ cited to a different portion of the record (AR 285) in noting Plaintiff had "difficulty with reading, spelling, and math." AR 23. Plaintiff also points to one particular result from a Woodcock-Johnson Test of Achievement (WJTA-III) (AR 274), while the ALJ discussed results from that test on a different date (AR 291), as well as additional test results. AR 23. Plaintiff takes issue with the ALJ citation to Plaintiff being "very sweet" with a "wonderful personality," arguing personality is not the basis for alleged disability. In context, however, the ALJ noted that records showed Plaintiff was "very sweet, popular, and well[-]liked by her peers," and that she had "a wonderful personality and participated in class discussions and answered questions when called upon in class." AR 23; *see also* AR 285, 417. These facts correlated to Plaintiff's social functioning and contradict her reported disabling limitations in that area. After reviewing the records, I find the ALJ provided a fair overall summary of Plaintiff's educational records (AR 269-321, 415-31) and sufficient explanation for the ALJ's conclusions.

Plaintiff also challenges the ALJ's consideration of the medical evidence. Plaintiff points to the ALJ's failure to discuss observations made by the forensic nurse when discussing Plaintiff's emergency room visit on February 10, 2023. The ALJ discussed records from this incident (AR 452-62), noting Plaintiff "reported feeling overwhelmed and upset" but "only vague suicidal thoughts." AR 24. The ALJ also cited results from a mental status examination (MSE), showing Plaintiff was tearful but cooperative and

5

had normal behavior and interactions. *Id.* The records from this visit support those findings. Plaintiff points to observations made by a forensic nurse that Plaintiff's "thoughts and speech are rambling and she is all over the place mentally," was "[v]ery emotional" and "visibly anxious and upset." AR 461. Plaintiff was discharged after the provider felt it was safe to do so, and Plaintiff felt comfortable going home. The ALJ's decision shows she considered these records and overall provided a fair summary.[14]

Plaintiff also argues the record does not support the ALJ's conclusion that Plaintiff remained overall stable with medication. Earlier treatment records, from February, April, and May 2023 (following Plaintiff's emergency room visit), include MSEs where Plaintiff appeared fatigued and disheveled with soiled clothing; she demonstrated guarded behavior; her speech was soft, monotone, and delayed; her mood was sad, labile, and apathetic; she displayed a sad, sullen, and tearful affect; and her judgment and insight were impaired. AR 492, 503, 598. Records from later visits show improved or normal MSEs. AR 474, 480, 485, 576, 581-82, 602, 610, 618, 625, 632, 639, 658-59, 664-65, 675, 690, 697, 704. Treatment records demonstrate other improvements as well. Toward the end of May 2023, Plaintiff reported improved anxiety. AR 485. In August 2023, she said her medication was "working better" (following an increase in dosage in June 2023). AR 474. In January 2024, Plaintiff reported a medication (added in November 2023) helped her mood significantly and that she felt she was able to control her emotions and not break down (for example, when she went to Walmart). AR 575, 580. She also reported improved concentration and sleep. AR 580. In March 2024, Plaintiff noticed feeling more emotional and tearful, but overall she felt happier than before. AR 586. At the end of April 2024, she reported her medication kept her mood more even and she appeared to be in a better mood, despite being tearful when discussing

---

[14] The ALJ's decision lists October 2023 for the date of this visit, but the records cited show the emergency room visit occurred on February 10, 2023.

6

a breakup with her boyfriend. AR 658. In July 2024, Plaintiff stated she was doing better, that medication helped her tearfulness, and she believed she would more than likely "be able to adjust to her new living environment" with an upcoming move. AR 664-65. She reported no difficulties with sleep or mood swings. AR 664. The record supports the ALJ's conclusion that medication overall improved Plaintiff's symptoms.

Plaintiff also points to the consultative examination (AR 549-52) and statements by the consultative examiner (CE) that Plaintiff "has some deficits in basic self-care and significant deficits in activities of daily living." AR 552. The ALJ discussed findings from the CE's examination of Plaintiff and results from testing. AR 25-26. As the ALJ noted, the CE did not provide opinions about Plaintiff's functional limitations. Plaintiff overlooks what the ALJ appropriately concluded—that the CE's comments about Plaintiff having deficits in self-care and activities of daily living were based on Plaintiff's subjective reports during the examination. Under "Activities of Daily Living/Socialization/Interests," the CE wrote that Plaintiff "described having some deficits in tasks associated with basic self-care" and "needs reminders to brush her teeth, wash her face, and take her medication," that she neglected these tasks when depressed, and that "she described having significant deficits" in her activities of daily living. AR 552. The ALJ found the CE's statements were not consistent with treating notations. AR 28. The record supports this conclusion. During the examination, the CE noted under "Clinical Observations" that Plaintiff was "appropriately dressed and groomed." AR 550. The medical records do not show that Plaintiff complained of issues with self-care or activities of daily living and show she was functional in this area. *See* AR 504 (reported no impact on activities of daily living), 567 (reported no issues with independent functioning). The ALJ committed no error in considering the CE's report.

Finally, Plaintiff asserts that the ALJ's decision is unreviewable because the ALJ failed to connect the evidence to the ALJ's determination. "The ALJ's decision must demonstrate the path of his reasoning, and the evidence must lead logically to his

7

conclusion. The ALJ need not discuss every piece of evidence in the record, but must provide at least a glimpse into his reasoning."[15] Plaintiff relies on a case where the court found the ALJ did not sufficiently explain how the evidence supported the ALJ's conclusion.[16] In this case, however, the ALJ wrote a thorough decision that allows this court to review and understand the ALJ's conclusion. The ALJ provided a fair overview of the record, and substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints are inconsistent with the record.

### III. CONCLUSION

I **affirm** the Commissioner's decision. Judgment will enter in favor of the Commissioner.

**SO ORDERED** on March 30, 2026.

Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[15] ***Hannu v. Kijakazi***, No. 4:22-CV-00306, 2023 WL 11999018, at \*7 (S.D. Iowa Oct. 11, 2023), *report and recommendation adopted*, 2023 WL 11999252 (Nov. 3, 2023) (citations omitted).

[16] *See* ***White v. Berryhill***, No. 18-CV-2005, 2019 WL 586757, at \*5-6 (N.D. Iowa Feb. 13, 2019), *report and recommendation adopted sub nom.*, ***White v. Comm'r Soc. Sec.***, 2019 WL 1239852 (Mar. 18, 2019) (finding ALJ "does not explain what evidence, if any, supports his conclusion" that claimant would be off task no more than ten percent of the time, noting "the ALJ cited no contradictory evidence" undermining medical opinions that claimant had greater restriction and that the ALJ "did not explain what in the 'evidence as a whole' he relied upon" in discounting the medical opinions).

8